UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| RONALD E. PORTER, | Case No. 1:18-cv-281 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Ronald E. Porter filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes. Plaintiff has also filed a motion for a sentence six remand which Defendant has opposed. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In December 2014, Plaintiff filed for Supplemental Security Income alleging a disability onset date of January 27, 2012. (Tr. 55). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On January 25, 2017, ALJ Renita Bivins held a hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 55). At this hearing, Plaintiff amended his alleged onset date to January 22, 2015, explaining that there was no medical evidence prior to the

application. However, Plaintiff is eligible for benefits beginning at the protective filing date. After discussing the proposed amendment with Plaintiff's counsel, the ALJ considered the application beginning at the December 2014 protective filing date, avoiding the possibility of an adjudicated five-week period. (Tr. 55). In October 2017, the ALJ determined that Plaintiff was not under a disability as defined by the Social Security Act. (Tr. 55-67). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Plaintiff filed an appeal to this Court on April 24, 2018, seeking judicial review of the denial of his application for benefits.

Plaintiff was 47-years-old on the date the application was filed, and has at least a high school diploma. (Tr. 66). Plaintiff lives in a house with his wife and son, and receives visits from his family. (Tr. 58-59). Plaintiff's relevant past work experience included work as a route driver helper (unskilled work ordinarily performed at medium exertion level) and as a day laborer (unskilled work typically performed at heavy exertional level but actually performed at sedentary level by Plaintiff). (Tr. 66).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the the following severe impairments: "spinal disorder, polyneuropathy, affective disorder, and anxiety." (Tr. 57). Plaintiff reports no problems dressing himself or showering, and can prepare simple meals. However, Plaintiff does not perform other duties like grocery shopping since he lost his license due to a DUI conviction ten years prior. (Tr. 58). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. *Id.* The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform medium work with the following limitations:

> [The claimant] is further limited to lifting and carrying up to 50 pounds occasionally and 25 pounds frequently; standing and/or walking for 6 hours per 8-hour workday; sitting for 6 hours per 8-hour workday, with normal breaks; frequently climbing ramps, stairs, ladders, ropes, or scaffolds; frequently pushing, pulling, or reaching in all directions with the left upper extremity; performing unskilled work with no strict time for production requirements and with only a few changes in routine; working in a nonpublic setting with only superficial, intermittent interaction with public, coworkers, and supervisors; and performing work that permits him to be off task 4% of the work period.

(Tr. 60). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is unable to perform his past relevant work. (Tr. 66). Nonetheless, there are jobs that exist in significant numbers in the national economy that he can perform, including such jobs as sweeper/cleaner, hand packager, and lab equipment cleaner. (Tr. 67). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) committing material inconsistencies within the record; 2) incorrectly weighing the opinions of doctors and psychologists; 3) denying Plaintiff's subjective complaints based on testimony outside the record; 4) abusing her discretion in refusing Plaintiff's requests to update his medical records; and 5) incorrectly determining Plaintiff's vocational abilities. Upon close analysis, I conclude that the ALJ erred in evaluating the findings of Plaintiff's treating physician, thereby requiring remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

4

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is supported by substantial evidence**

1. *Evaluation of opinion evidence*

Plaintiff argues that the ALJ erred in failing to give controlling weight to the findings of Dr. Owens, Plaintiff's treating physician and Dr. Baily.

The record contains the following opinion evidence:

In March 2015 and September 2015, state agency physicians Gerald Klyop, M.D., and Ermias Seleshi, M.D., reviewed the entire medical record and Plaintiff's statements about the severity of his symptoms. (Tr. 133-36, 148-52). Dr. Klyop opined that Plaintiff retained the ability to lift and carry up to 50 pounds occasionally and 25 pounds frequently and sit and stand or walk up to 6 hours each in a normal workday. (Tr. 134). He also opined that Plaintiff could frequently climb ramps and stairs, stoop and crouch and occasionally climb ladders, ropes and scaffolds, kneel and crawl. (Tr. 134). He opined that Plaintiff was limited to frequent lifting overhead. (Tr. 135). Dr. Klyop's conclusions were based on documented clinical examination findings that included normal range of motion and strength and x-rays which showed only mild degenerative changes in the cervical and lumbar spine. (Tr. 136).

Licensed Clinical Psychologist Jessica Twehues, Psy.D., examined Plaintiff at the request of the state agency in May 2015. (Tr. 306-12). Dr. Twehues opined that Plaintiff was likely to have difficulties sustaining focus for prolonged periods of time, he was likely to be prone to high rates of absenteeism from work due to panic disorder, and his work pace was expected to be mildly slowed due to his depressed mood. (Tr. 311). She also opined that he was likely to experience increased panic attacks in response to workplace pressures, especially high work demands. (Tr. 311). She opined that increased stress

and pressure would likely increase his symptoms and lead to more problems with concentration and work pace. (Tr. 311).

In June 2015 and October 2015, state agency psychologists, Patricia Kirwin, Ph.D., and William Bolz, M.D., reviewed the medical evidence, including Dr. Twehues's report, and noted that although Dr. Twehues diagnosed ADHD based on his restlessness and reported symptoms, there was no longitudinal history of this disorder in the records. (Tr. 131-36, 150-52). Instead, she noted that Plaintiff's symptoms were more consistent with anxiety. (Tr. 133).

In September 2015, Jennifer Wischer Bailey, M.D., examined Plaintiff at the request of the state agency. (Tr. 330-33). Dr. Bailey administered manual muscle testing, which showed normal strength and range of motion, with the exception of slightly diminished range of motion in the cervical spine. (Tr. 326-29, 331-32). Plaintiff showed no signs of muscle atrophy, but pinprick and light touch were diminished in his left upper extremity and from his mid-thighs to his toes. (Tr. 331). Function was well preserved in the left hand and arm. (Tr. 332). Dr. Bailey opined that Plaintiff was capable of performing a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. (Tr. 332-33). She also opined that Plaintiff had no difficulty reaching, grasping, and handling objects (Tr. 333).

In January 2017, Heather Owens, M.D., Plaintiff's treating physician, opined that Plaintiff was unable to work from September 2014 through April 13, 2018. (Tr. 393).

In June 2017, physical therapist Karen Scholl completed a functional capacity evaluation for Dr. Owens. (Tr. 395-97). According to Ms. Scholl's report, Plaintiff could independently prepare meals, wash dishes, do laundry, do housekeeping and use a

7

computer. (Tr. 396). She limited Plaintiff to overhead lifting up to 2 ½ pounds occasionally, carrying up to 12 pounds rarely. She further opined that Plaintiff should avoid bending, kneeling, and crawling and should limit lifting 15 pounds from floor to waist infrequently. (Tr. 395).

Also, in June 2017, Dr. Owens completed a statement at the request the Social Security Administration and indicated that she had seen Plaintiff every 1-6 months for more than 2 years. (Tr. 388). She opined that Plaintiff could not walk the length of a city block without the need to rest due to pain, that he could not walk on uneven terrain and that he could not climb steps without the use of a handrail. (Tr. 389). Dr. Owens further opined that Plaintiff had problems with balancing, stooping, crouching, and bending and that he could not sit more than 4 hours total nor stand more than 3 hours total in an 8-hour workday. (Tr. 389-90). She noted that Plaintiff did not need an assistive device to walk. (Tr. 390). She stated he could not lift 20 pounds and could only "rarely" lift 15 pounds or less. (Tr. 390). She stated he could only rarely carry 10 pounds or less. (Tr. 390). She also opined that Plaintiff could not push or pull arm or leg controls while sitting and could not climb stairs, ladders, scaffolds, ropes or ramps. (Tr. 391). Dr. Owens opined that Plaintiff would be off task more than 30% of the workday, and would be absent more than 5 days per month due to his medical impairments. (Tr. 391).

In formulating Plaintiff's RFC, the ALJ assigned little weight to the opinions of Dr. Owens. In so concluding, the ALJ found that Dr. Owens' opinions are not supported by her own treatment notes and are inconsistent with overall medical evidence of record. In this regard, the ALJ noted that Dr. Owen's treatment notes from June 2015 conclude that Plaintiff's neuropathy was stable. (Tr. 64). The ALJ further noted that Dr. Owens'

8

November 2015 examination found Plaintiff's neck and straight let raising to be normal. The ALJ also determined that Dr. Owens' opinion is "diminished by the fact that she based her opinion on a functional capacity evaluation of a one-time examination," which is not support by the overall medical record and no diagnostic testing to support such extreme limitations. *Id.* Additionally, the ALJ found that Dr. Owens' opinion is not entirely consistent with Plaintiff's testimony that, since his alleged onset date, "he watches television programming such as action and comedy and indicated his hobby is watching television throughout the day, which suggest ability to sit longer than opined." (Tr. 64). Plaintiff contends that ALJ's decision is not substantially supported in this regard. The undersigned agrees.

In evaluating the opinion evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record." *Blakley v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th

9

Cir. 2004)). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added)." "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); Wilson, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). Thus, the treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'f Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Id.* Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96–2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the

Commissioner could not possibly credit it." *Blakley,* 581 F.3d at 409 (quoting *Wilson,* 378 F.3d at 547).

Here, the ALJ's articulated reasons for rejecting Dr. Owens' opinions do not constitute "good reasons" for rejecting all of her findings. As noted above, the ALJ found Dr. Owens' opinions to be inconsistent with her treatment notes and the overall record based, in part, on two instances in which Dr. Owens' indicated that Plaintiff's neuropathy was stable and his neck and straight leg raising was normal. In so concluding, the ALJ overlooked or ignored portions of the record which were consistent with the opinions of Dr. Owens, while selecting portions of the record supporting his non-disability decision. This type of selective review cannot support a conclusion that the ALJ's decision was supported by substantial evidence. *See Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). *Carlisle v. Barnhart*, No. 3:05CV0238, 2008 WL 420032, at *2 (S.D.Ohio Feb.14, 2008) (ALJ selectively considered medical evidence when evaluating treating physicians' opinions and substituted his own lay opinion). Notably, the record indicates diminished pinprick in the legs, peripheral neuropathy, degenerative disc disease and radiculopathy. Dr. Owens' opinion was also consistent with the findings of Ms. Scholl and Dr. Bailey. As noted above, Ms. Scholl found that numbness and unsteady gait and limited Plaintiff to overhead lifting up to 2½ pounds occasionally, carrying up to 12 pounds rarely. She further opined that Plaintiff should avoid bending, kneeling, and crawling and should limit lifting 15 pounds from floor to waist infrequently. (Tr. 395). Similarly, Dr. Bailey noted pinprick and touch are diminished over left upper extremity and mid thigs to toes, mild kyphosis of the upper back, and neck pain with left-sided radiculopathy. Dr. Bailey opined that Plaintiff was capable of performing a mild to moderate amount of sitting, ambulating,

standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects (Tr. 332-33).

Plaintiff further asserts that that the ALJ erred in rejecting Dr. Owens' opinion, based at least in part on Plaintiff's ability to watch television. As detailed above, the ALJ found that Dr. Owens' opinion is not entirely consistent with Plaintiff's testimony that, since his alleged onset date, "he watches television programming such as action and comedy and indicated his hobby is watching television throughout the day, which suggest ability to sit longer than opined." (Tr. 64).

The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record. However, it appears in making this determination, the ALJ, in part, impermissibly acted as her own medical expert. See *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir.1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975). While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, she is not permitted to make his own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D.Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir.1963); *Clifford v. Apfel*, 22.7 F.3d 863, 870 (7th Cir.2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir.1985); *Sigler v. Sec'y of H.H.S.*, 892 F.Supp. 183, 187–88 (E.D.Mich.1995)). *See also Rosa v. Callahan*, 168 F.3d 72, 78–79 (2nd Cir.1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion.");

*Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

It is well established that claimant's ability to activities of daily living, including watching television does not translate to an ability to perform substantial gainful activity. *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 248 (6th Cir. 2007); *Barker-Bair v. Comm'r of Soc. Sec.*, No. 1:06-cv-00696, 2008 U.S. Dist. LEXIS 27011, at * 11 (S.D. Ohio Apr. 3, 2008) (*citing Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)). The undersigned agrees that plaintiff's ability to engage in daily activities does not establish *ipso facto* that he is able to engage in gainful activity 40 hours per week. *Bramel v. Comm'r of Soc. Sec.*, No. 1:13CV281, 2014 WL 4162543, at *9 (S.D. Ohio Aug. 20, 2014).

Additionally, it appears that the ALJ applied a more rigorous scrutiny to Dr. Owens' opinions than to those of the nonexamining opinions. The Sixth Circuit has found that this is precisely the inverse of the analysis that the regulation requires. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013), reh'g denied (May 2, 2013). See also 20 C.F.R. § 404.1527(c); Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996). As such, the ALJ's decision indicates that his assessment of the opinion evidence failed to abide by the Commissioner's regulations and therefore calls into question the ALJ's analysis. *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) ("An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence." (internal quotation marks omitted)).

Based on the foregoing, the reasons given by the ALJ for the weight assigned to Dr. Owens are not supported by the record; and therefore, fail to meet the requirement

that the ALJ "give good reasons" for not giving weight to a treating physician. *See Wilson,* 378 F.3d at 545. As such, this matter should be remanded for further fact-finding.

**C**. **Sentence Six Remand**

Also before the Court is Plaintiff's motion for a sentence six remand to allow the Commissioner to consider additional records from Bethel Family Practice for the period from January 2017 to September 2017. (Tr. 7- 51, 213-215).

Pursuant to sentence six, a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is both new, in that it was "not in existence or available to the claimant at the time of the administrative proceeding" and "material," meaning there is "a reasonable probability that the Secretary would have reached a difference disposition." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001) (citations omitted); see also *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir.2006). The plaintiff must also establish good cause for his failure to present the evidence to the ALJ. See Bass v. McMahon, 499 F.3d 506 (6th Cir.2007); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989). "'Good cause' is not established solely because the new evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a 'harder line.'" *Saunders v. Comm'r of Soc. Sec.*, 2010 WL 1132286 at *3 (W.D.Mich. March 3, 2010) (quoting *Oliver v. Sec. of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986) (additional citations omitted).

Here, Plaintiff contends that the new evidence is both new and material and shows the "longitudinal" record of treatment between 2015 and October 2017 that the ALJ complained was missing from the record. Plaintiff further asserts the records should be considered because the ALJ refused to leave the record open to submit additional

14

evidence. The Commission, however, contends that Plaintiff has not demonstrated good cause for failing to proffer these records to the ALJ before she issued her decision. Notably, at the administrative hearing, the ALJ specifically stated that she would assume that there was "no new material or outstanding evidence to be considered," neither Plaintiff nor her counsel objected (Tr. 75).

In any event, the Sixth Circuit has held that when an ALJ commits an error that results in a sentence four remand, the ALJ can consider additional evidence, even though the plaintiff has not otherwise met the requirements for a sentence six remand. F*aucher v. Sec. of Health and Human Servs.*, 17 F.3d 171, 175 (6th Cir.1994). Accordingly, because remand is warranted to cure the errors as outlined above, the ALJ should also be instructed to consider the additional evidence on remand.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. See *Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does

the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. Faucher, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: the decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g) consistent with this Report and Recommendation. **IT IS FURTHER RECOMMENDED THAT** Plaintiff's motion for a sentence six remand (Doc. 8) be **DENIED as MOOT** consistent with the above remand recommendation. As no further matters remain pending for the Court's review, this case be **CLOSED**.

       *s/Stephanie K. Bowman*
       Stephanie K. Bowman
       United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

RONALD E. PORTER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:18-cv-281

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).